De Novo Review By way of background, we have a scheme here that gave the miners property rights for a long time – the exclusive right of possession. Then, in 1954, that was made subject to the right of the Forest Service to manage surface resources. It's like two property owners together. And, for many years, if the two property owners had a quarrel, they would come to the federal courts or they would go to the I.B.L.A. And the I.B.L.A. would resolve this quarrel and say, yes, the miner can do this or not do that. And then, with the prior decision in this case, we had a very radical change in the law. And suddenly, the Forest Service asserted the right to go out and say, we just disagree with what you're doing, we don't find it necessary, and obey us, or go to jail. And so, we are here today to find out what kind of procedure must be employed in a criminal trial where someone has disagreed with the Forest Service and taken it to trial. I would argue that this is – What you mentioned, the I.B.L.A.? The Interior Board of Land Appeals. The Forest Service has no jurisdiction whatsoever concerning the regulation of mining. That is in the Department of Interior. The Forest Service's sole job is to manage the surface resources. So, if you're mining somewhere outside of a national forest, the Forest Service has no say. Correct. But if you're residing in a national forest, then don't they have a say on that? Indeed, they do. They have the right to propose – We have postulated the correct standard here is, one, is what the miner doing reasonably incident to mining? Is it within the scope of this property grant? Two, the Forest Service job then becomes what environmental harm is occurring and what should we propose by way of mitigation or avoidance to minimize this harm and protect the surface resources? Then comes the third part, the part that the Forest Service totally ignored. And that's in 612B. And that says to the Forest Service, is what you're proposing materially interfering with the mining? Because the design of the mining statutes is, the minerals are where they are. If they happen to be on Forest Service ground, there is a right to dig them out. The Forest Service job is to sort of propose a way to dig them out that minimizes the environmental consequences without materially interfering with the mining. And it's that standard and it's that complex balance of statutory interests that the Forest Service did the wrong standard. Instead of that delicate balance, they just looked and said, well, we don't think this is necessary. You'll see the word necessary in every one of their decisions. Yet what's remarkable about it is, it's not a word that appears in any statute or regulation. It's something they made up. And it's something that in operation completely destroys all the mining rights because one can always disagree that something is necessary. It's not necessary for you to be there. It's not necessary for you to use power tools. It's not necessary for you to use a shovel that's this big or whatever it is. It gets the Forest Service into this area it was never supposed to be. And that's part of why I'm urging de novo review here. The district court looked at this and said, yeah, if this were de novo review, I probably would have come to a different result. But if the Forest Service is allowed to take this thing, we just think it's unnecessary. And then protect that finding with an arbitrary and capricious standard so that virtually anything they say has to be accepted because they're an agency and they said it. Then we have a profoundly unfair result, which results in a criminal stigma and lifelong stigma and unemployability for this man for getting into this contest with the Forest Service. And this is why we think de novo review is important. There's also a defect. The administrative record essentially does not exist. They had someone come in after the fact and say, to the best of my knowledge, here's what we considered. That's not an administrative record at all. And so the whole premise of arbitrary and capricious review is completely absent in this case. Now with respect to the legal standard, I think I've explained that it's not consistent with the law. Asking if something is necessary is a very odd thing to do when the statute says you are granted an exclusive right of possession subject to the Forest Service's right to manage. The right of possession and the right to be there is consistent with centuries of mining law. It's consistent with this doctrine of pettis possesio, which the Forest Service completely overlooked, which says the miner has to be there on the claim to defend it. I'm not following. I thought the Forest Service determined that year-round residency was not reasonably incident to mining operations under 30 U.S.C. section 612A. Once what? I thought they were saying that it was not reasonably incident, and you're unpatented mining claim is limited by that section, isn't it? The occupancy must be reasonably incident to mine. That is correct. But what they said and what every appeal says is we don't think it's necessary. And if you read all the appeal documents, every official involved at every level was we don't think it's necessary. You can commute in there. To change the subject a little to the factual circumstances, we think you can commute in there. And the miner explains you can't commute in there. It's high elevation. It's remote. It's snowed in much of the winter. It's economically prohibitive. You have to spend massive amounts of money for gas. Then you have to come up with a whole short-term residence for these three or four or five months in the winter when you're not there, and you have to pay for all that. And the notion that the occupancy there is not reasonably incident is categorically wrong because we have, again, a century of IBLA precedent and precedent of this court like United States v. Shumway. United States v. Shumway says the grocer has the right to live over the store just like the miner has the right to live on the claim. And it's not even just for mining. It's a right to engage in milling and processing. And there's no factual dispute whatsoever that this miner was engaged in good faith in all of those activities all year round. So they may, once or twice in the record, you can find the words reasonably incident. But overwhelmingly, the idea was, well, you just don't have to be there. And that's a totally different concept. Right, but didn't the Forest Service allow part-time residency during the period that Oregon state law permitted active section dredging? That is May 15th to 11th, November 20th. So the Forest Service made a judgment that it was reasonably incident during a period of time when the state permitted that type of mining. But when you say that type of mining, you're acting as though that's the only type. And that's manifestly untrue. No, no, I'm saying, as I understand it, that's not the only type. That the other type, the Forest Service said, doesn't require heavy equipment. It's easy to commute in and out with those kinds, I guess it was pans or something, but the first type is you have to have heavier equipment. Am I right about that? Yes and no. The equipment is somewhat heavier, yes, but a big sluice box is as big as a suction dredge. And so the prohibition on the suction dredging in these winter months, which by the way was engineered by the Forest Service in bad faith, because there are no fish, there's no environmental thing going on here at all, they arbitrarily prevailed upon the state to truncate that period as the first step of what went on here. But we have the expert testimony in the record and the testimony of Mr. Backland that you've got these big heavy boxes and you set them up and then you have to arrange the whole thing and it takes a long time. You can't go in and out every day and if you do leave stuff there, people steal it. And the record was documented and proven that theft was a problem at this site. And so again, we go back to the century of cases which say that if you need to be there to protect your stuff, that is reasonably incident to mining. The reasonably incident concept is very broad and the necessary concept is very narrow. And the Forest Service has really looked at this through entirely the wrong lens because necessary is not a statutory or regulatory fact. Hey, counsel, I think, just speaking as one judge, your argument is tough. If you're saying that the Forest Service applied a necessity standard. Because at some point in their decision, I thought they did frame it in terms of what was reasonably incident to mining. But if your argument is that year-round residency is reasonably incident to mining, this claim, that they were arbitrary and capricious concluding otherwise, I can understand that argument. But I think it's got to be probably on those terms to be successful. That argument is certainly one I'm making. I would just say that last time this case was before the court and this court described the decisions of the Forest Service in a couple of little paragraphs I've quoted in my opening brief, they didn't include the reasonably incident concept at all. It was all about we don't think it's necessary. We don't think it's necessary. We don't think it's necessary. Reasonably incident is something that's sort of just words that come in there once in a while. But it isn't the real ground of the decision. I mean, you have an agency operating here without rules that reference the statutorily relevant factors at all. Okay. Counsel, your time is? May I say two minutes for rebuttal?  Thank you, Your Honor. May it please the Court, my name is Robert Oakley. I'm here from the Department of Justice representing the Forest Service. Let me go first to this question of reasonably incident versus reasonably necessary. One thing that counsel just completely fails to note is how this court, in this case, in the prior appeal, in this case, used those terms as synonymous. If you look at page, it's 689F3rd at 995, in the prior Backland appeal, I'm going to quote now, and this is the court's language, quote, the mining laws present residence, permit residency on a mining claim only to the extent reasonably necessary to mining operations, C30CFR section 612A. Then the court has a parenthetical after that statutory citation, again quoting from the court, providing that an unpatented mining claim, quote, shall not be used for any purposes other than prospecting, mining, or processing operations and uses reasonably incident thereto. So the court used reasonably necessary and then cited to the statute. Counsel? Yes. Just as one judge again, I'm not terribly concerned with the language. Okay. At least I'm willing to accept that the agency was applying the reasonably incident standard. However, I am troubled by whether there's a need for residents to mine the claim in the parts of the year when you can't use suction dredging, because how is someone supposed to lug those boxes back and forth? I can see them with a gold pan. Sure, that's light. But how do they bring boxes for a sluice operation? I don't find that adequate a description that the equipment is that heavy. I was going through the record before this argument. I know they cite to a self-described expert that the judge allowed to file the declaration, and he gives some opinions on sluice boxes, but he doesn't talk about sluice boxes that they're using. They had many opportunities to submit facts to the Forest Service, and the Forest Service considered those in all their decisions. The Forest Service had certified people look at this, and under the Arbitrary and Capricious Standard, and let's be clear, that standard applies. This court remanded this case for a, quote, APA challenge, close quotes, and they haven't shown any real basis to get out of the Arbitrary and Capricious Standard. That's what I'm trying to understand, because, you know, is the idea that like every morning the miner's going to drive up to the plane from some motel 30 miles away with boxes in his truck and set up a sluice operation, and then that evening take it down and do the whole thing over again the next day? Yes, it is, Your Honor. Let me point to a couple of this court's decisions which say that that's not unreasonable if you look at either the Clouser, or Clouser, I'm not sure how to pronounce it, versus Espy case, and cases where miners were denied use of motorized transport. They were told they had to bring it in on pack horses or pack mules, and the miner said, well, this is going to make it less efficient, and we're going to make less money and recover fewer minerals if you impose this on us, and the court said, well, that makes sense, we agree, but still the Forest Service has broad authority, this court has repeatedly said, the Forest Service has broad authority to regulate use of national forests, even if those people are carrying out mining. There is no case law that says residency is always allowed on mining. If the difficulty of setting up is enough to establish a right to residency, then let's face it, who would not be entitled to a right to residency on a mining operation? If you could live, always live, at the mining operation, you're going to be able to get up in the morning, start early, work later. In that case, if we're going to adopt such a rule, then all the cases where this court Well, counsel, that's just not correct, right? That's just not correct. It's a question of how burdensome it would be, and so to Judge Wardlaw's point, if someone were literally panning out there and that's all it took to throw in the back of the pickup truck a gold pan, that would be very qualitatively different than this equipment that is at issue here, isn't it? No, I would disagree, because you're still going to lose, he's complaining a great deal about the time in commuting, and he's saying, well, when I have to commute, I don't have to worry about snow. The commute time wouldn't differ, but certainly the burden would. Right, but if you're going to, this case then is going to come down to how burdensome it is to set up the sluice boxes, because we understand that the dredging, the forest service, the suction dredging But the burden works two ways. He's got a right to mine the claim, and so his point is, how burdensome is, why is it interfering with the forest service, you know, the surface rights, if the equipment is left out there, and I'm out there overnight? So it really does work two ways. There's a balance, isn't there? It could, but that's not What we have to do is figure out whether or not the balance was struck in a way that's correct or violates the arbitrary and capricious standard, as I see it. I think that's right, but you have to look and see, first, the arbitrary and capricious standard is deferential. I wish we won cases as easily as counsel for Mr. Backlund said on the arbitrary and capricious standard. We understand that it's deferential, but what about the point that there is a balance that has to be struck? There is a balance, but the record here has the forest service looking at these very facts, and this is not a trial de novo, and saying Well, what does the forest service say on the other side of the equation about why this equipment should need to be taken down and carted out each evening? Because residency is normally not allowed on forest service land, and Well, that just restates the conclusion, though. Why not? What's the burden? Because it can be done. What's the contrary balance? Okay. Please. The burden here is that it has to be reasonably incident, and that the mining can't What's that mean, reasonably incident? It means that the forest service can't cut off the mining. The forest service doesn't have the power to say you can't mine at all, but the forest service, again, this Court has in the SB case and the other cases, has recognized broad Okay, so here's my question. It seems to me that you want us to read reasonably incident to be synonymous with necessary. What's your strongest authority for that? You quoted our earlier opinion. Your decision. What else have you got? Because, of course, that opinion was really talking about a different issue. So what else have you got that under 30 CFR 612A, reasonably incident means synonymous Okay. Sorry. Is synonymous with necessary, please. What have you got? Well, the first case, I would have to disagree. This Court was faced with exactly this issue, but look at the Noguera case, 403F2, 816.825. The Court said certainly permanent residence of the possessor, not reasonably related. In Richardson, the Court uses necessary instead of incident when it says that you can't allow, it's going to impose an injunction to prevent some blasting. The Court has consistently used reasonably necessary and reasonably incident as synonymous. And so I should look at those two cases for that? Yes, you should. Anything else? Anything else is simply that the Forest Service has to protect the forest. That the forest, and they have to Absolutely, and we have recognized broad authority there. That's why I asked what the Forest Service cited to determine whether or not what the minor is asking here is damaging or harmful to the forest. That is not, this Court has never found that we have to show individual harm on each basis. Now let's take this case. If we're going to say, okay, you're going to lose some hours either way putting up a sluice box. And that's going to mean that you get to live year round. And even though the Forest Service, by the way, would allow them to put a storage building there where they could lock the stuff up, and they wouldn't have to carry it back and forth. They just have to carry it themselves back and forth. Even if you're going to say that, then you're going to open the door for all these people who have unpatented mining claims to reside in the national forest. And you're going to have to then look, not at each individual one is going to have an impact on using Forest Service land, but whether each, whether they are cumulative. In that aggregate, does the record tell us how many miners have patented claims, mining claims in that national forest? No, I mean if they patented, if the patent process is completed, they own the land. But I don't, as to how many claims there are. Say unpatented. Unpatented. I'm sorry, I misheard. The answer is no. I think you heard, but I misspoke. In any event, the answer is no. I would point out that this Court upheld the co-defendant's conviction in that case. But I think just look at your prior cases and the Forest Service's broad authority and the deference. The agency looked at all of these issues, each conclusion, and we're not here on a trial day, never, to argue those same facts. Thank you. Okay. Counsel, what's your best authority that reasonably incident doesn't mean necessary? The fact that no case has ever transmuted it in that fashion at all. The Nogura case talked about whether a residence was reasonably related to mining. Related and necessary, of course, are two completely different words, and related is closer to incident. The Richardson case involved the finding that a particular mining method was not necessary. The Richardson people were using dynamite and blasting these gigantic holes for the stated purpose of sampling small amounts of copper ore. The Forest Service had an expert that said the only reasonable way to sample the copper ore is with core drilling, and the miners had no answer for why they were doing what they were doing. It was completely unnecessary. But the necessary aspect came into the case once the finding of environmental harm had been made. It dealt with, and here there is nothing. The argument is just, we don't care that they're a property owner, we don't care that they're a property owner. Counsel, how do you deal with the argument that if Mr. Backlund's allowed to reside on his mining claim property, that all persons who have unpatented claims may have residence in the National Forest, and that if that could change the character of the forest, that is a subject on which the Forest Service should get deference? That is not a subject that Congress has confided to their jurisdiction at all. Congress granted the property rights through the Department of Interior. It granted the right of possession. It granted the right of occupancy, and absent some sort of showing of specific harm from a particular mining operation, they can't throw them out. In the real world, the question is, are they out there mining in good faith? That's why we have a century of this good faith test. If they're out there and they're mining, they're entitled to be let alone. It's like this Court said in Chumway. That's an overstatement, though. That's an overstatement. If they're out there mining in good faith, they're entitled to be let alone. And not causing environmental harm that should be regulated. Look, I should be qualified that way. Well, you're well over your extra minute of argument, so unless Judge Wardlaw or Judge We thank counsel on both sides for their arguments.
judges: WARDLAW, GOULD, CHRISTEN